IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2022 Session

FILED

NOV 2 9 2022

Clerk of the Appellate Courts
Rec'd By _____

## STATE OF TENNESSEE v. DANIEL J. JAMISON

**Appeal from the Circuit Court for Moore County
No. 21-CR-1554    Forest A. Durard, Jr., Judge**

_____

### No. M2021-01302-CCA-R3-CD

_____

Defendant, Daniel J. Jamison, entered an open plea of guilty to aggravated burglary, theft of property valued at less than $1,000, aggravated criminal trespass, and public intoxication. The trial court imposed an effective six-year sentence to be served in the Department of Correction, followed by a consecutive sentence of eleven months and twenty-nine days in the county jail with all but ninety days to be served on supervised probation. On appeal, Defendant argues that his sentence was excessive. Following our review of the entire record, oral arguments, and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ. joined.

Mitchell A. Raines, Assistant Public Defender, Tennessee District Public Defenders Conference (on appeal) and Brian Beldin, Assistant Public Defender (at trial), for the appellant, Daniel J. Jamison.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Robert Carter, District Attorney General; and Holly Hewgley, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

The Moore County Grand Jury returned a four-count indictment charging Defendant with aggravated burglary, theft of property valued at less than $1,000, aggravated criminal trespass, and public intoxication. Defendant entered an open guilty plea to the offenses as charged in the indictment. The facts of this case, as set forth by the State at the guilty plea submission hearing, are as follows:

> [D]uring the night of October 15 and 16, 2020[,] [victim] woke up in her house at [. . .] here in Moore County, Tennessee because her dog was barking. It turned out the dog was doing what the dog ought to do, however she fussed at the dog and went back to sleep. Around 4:00 a.m. Deputy Harper responded to a call about a prowler just down the road at [. . .]. The report said the prowler was on the front porch, appeared to be high and the homeowner did not want him there and was calling to make him go.
>
> When Deputy Harper arrived he found [Defendant] who had slurred speech, restricted pupils and was unsteady on his feet, he was not fully oriented. Deputy Harper patted him down for weapons. A hard object stuffed in the back of his pants turned out to be a Samsung tablet.
>
> [Defendant] identified it as his, he also said he was on Meth, had been with friends earlier but got separated. He was arrested for public intoxication and the criminal trespass.
>
> At the jail Deputy Harper saw the tablet belonged to Tori Regan. He looked up her address, found it was [. . .], just down the road from where he had been, called the phone number associated with that address and woke her up and asked her if she was missing a tablet. She said hang on, she would go check. She reported back that she had found the lights on in her dining room, though they had been off when the family went to bed. She said she was missing a tablet that had been in the living room by the television that they used to run their television programming. The Defendant was read and waived his *Miranda* Rights, he was asked if he had been anywhere else and he did say he had been to one other house and that he had permission to have the tablet. The tablet was valued under $1,000, the Regan[s] had not given anyone permission to enter their house while they were asleep in the middle of the night nor take the tablet.

At the sentencing hearing, the presentence report was entered into evidence. Defendant's criminal history in the report consisted of eight convictions for criminal trespass, five convictions for driving on a suspended license, three convictions for public intoxication, three convictions for disorderly conduct, several traffic violations, and single convictions for casual exchange of methamphetamine, domestic assault, assault, theft, violation of an order of protection, and possession of drug paraphernalia. Defendant also acknowledged that he had used marijuana regularly since 2004 and methamphetamine from 2012 until his arrest in October, 2020. Defendant also had a conviction for petit larceny in Florida and pending charges in Florida for possession of a designer drug, possession of cocaine and two charges for failure to appear. The State introduced additional criminal history not reflected in the presentence report of two convictions for disorderly conduct, two convictions for being absent without leave ("AWOL") from the National Guard, and single convictions for criminal trespass and attempted auto burglary.

Libby Stejskal, Jail Administrator for the Moore County Jail, testified that she is keeper of the records for disciplinary matters that occur at the facility. She identified copies of Defendant's disciplinary reports, which included many disciplinary issues since his incarceration such as "failing to comply with jail rules, disrespect to staff, [including Jail Administrator Stejskal], back talking, just arguing in general." Jail Administrator Stejskal testified that Defendant also had violations for use of profanity, being out of bed after hours, and destruction of county property because of an incident where Defendant ripped the pants off of another inmate. She said that "[t]here will be fragments of time he won't get in trouble but those are only a few weeks at a time." Jail Administrator Stejskal testified it was eventually discovered that Defendant had a pending misdemeanor charge in Coffee County. Due to his disruptive behavior in the Moore County Jail, officials with Coffee County Jail agreed to house Defendant for a period of approximately three months. Jail Administrator Stejskal was not aware of any problems with Defendant in the Coffee County Jail.

Defendant gave an allocution during which he admitted to having a "severe addiction to meth for the better part of 10 years." He said that before being incarcerated for the present offenses, his "longest span of sobriety was no longer than 8 months[,]" which was due to his incarceration during that time for other offenses. Defendant further told the trial court that he had "obtained many public intox[ication]s during [his] times of addiction." He said that his perspective on life had now changed due to being "introduced to [Narcotics Anonymous] while being incarcerated, and that has made it very obvious that I'm to continue my path of sobriety once released." Defendant told the court that he planned to obtain and keep a job and that he had a "new and improved relationship" with his parents. He was confident that he could attend all meetings and abide by the "stipulations" of probation once released. He also expressed a desire to "further [his] knowledge by attending a school and obtaining a license or degree of some sort." Defendant indicated that sobriety was his "number one priority."

The trial court found Defendant to be a Range I, standard offender and applied three enhancement factors: that Defendant had a previous history of criminal convictions or criminal behavior, in addition to that necessary to establish the appropriate range; that Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and that Defendant was on probation when he committed the offenses in this case. T.C.A. § 40-35-114 (1), (8) and (13). The trial court found that no mitigating factors applied, disagreeing with Defendant that his conduct neither threatened nor caused serious bodily injury and refusing to consider Defendant's voluntary intoxication and military service. T.C.A. § 40-35-113 (1) and (13). The trial court imposed an effective six-year sentence to be served in the Department of Correction, followed by a consecutive sentence of eleven months and twenty-nine days in the county jail with all but ninety days to be served on supervised probation.

## ANALYSIS

Defendant argues that the sentence imposed by the trial court in this case was excessive because the trial court found no mitigating factors and ordered Defendant to serve partial consecutive sentences. The State responds that the trial court acted within its discretion in sentencing Defendant.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle*, our Supreme Court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012). Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

- 4 -

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing; and

(8) The result of the validated risk and needs assessment conducted by the department [of correction] and contained in the presentence report.

T.C.A. § 40-35-210(b).

In misdemeanor sentencing, "while the better practice is to make findings on the record when fixing a percentage of a defendant's sentence to be served in incarceration, a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The "*Bise* standard is the appropriate standard of review in misdemeanor sentencing cases." *State v. Gregory Gill*, No. W2018-00331-CCA-R3-CD, 2019 WL 549651, at *16 (Tenn. Crim. App. Feb. 11, 2019).

Trial courts are "required ... to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114; *see also Bise*, 380 S.W.3d at 701. Moreover, a trial court is "guided by – but not bound by – any applicable enhancement or mitigating factors when adjusting the length of a sentence[,]" and its "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

In this case, the record reflects that the trial court in sentencing Defendant, considered all appropriate principles set forth in Tennessee Code Annotated section 40-35-210(b). The trial court applied three enhancement factors, including Defendant's history of criminal convictions in addition to those necessary to establish the range; that Defendant, before trial or sentencing failed to comply with the conditions of a sentence involving release into the community; and that Defendant was on probation when he committed the offenses in this case. T.C.A. § 40-35-114 (1), (8) and (13). Defendant does not contest the application of those factors, and the record reflects that they were appropriately applied.

As set forth above, the presentence report and additional criminal history presented by the State reflects that Defendant had an extensive misdemeanor criminal history in Tennessee and conviction and pending charges in Florida. Defendant acknowledged that he had used marijuana regularly since 2004 and methamphetamine from 2012 until his arrest in October 2020. The trial court also pointed out that Defendant had "8 or 9, depending on how you slice it, violations of probation, that weighs very heavily on the Court."

The trial court reviewed mitigating factors proposed by Defendant and found that none applied in Defendant's case, concluding:

> I'll have to respectfully disagree with the defense on the application of any mitigating factors. Number one, that factor says the conduct neither threatened or caused serious bodily injury. As I noted a moment ago the legislature has determined that aggravated burglary needed to be removed from property crimes and placed in the situation where it was a crime against a person. And even if that had not happened I still would not apply it here. This was a bad situation and the facts that came out at the plea acceptance hearing were that [Defendant] appeared to be stoned out of his mind and he was wandering around, I doubt he knew what he was doing, but he made his way in to these people's house and stole some things and they were I believe in bed asleep if memory serves me correctly. This could have been bad for everybody involved.

> There is a gun in every house just about in Moore County and you were very lucky, [Defendant], that you did not wind up on the receiving end of that gun.

> Let's see, the argument that this was done perhaps maybe not with a sustained intent to violate the law because of voluntary intoxication of the defendant, I submit does not apply in this particular situation. The intoxication is voluntary, so I don't find any mitigating factors apply in this situation. What weighs heavy on the Court's mind, and granted both sides recognize this, is that he does not have any felony convictions, but by my count he has about 34 different misdemeanor convictions. [Defendant] was born in 1990 and is just now 31 years of age, these offenses occurred at age 30. In the 12 years span he has gotten a lot of contact with the criminal justice system. He has been given multiple opportunities to avail himself to probation and the services they give.

The record supports the trial court's findings with respect to the mitigating factors. *See* T.C.A. § 40-35-113 (1), (13).[1] Although the trial court did not address Defendant's military service, which Defendant argues also supports the application of mitigating factor (13), this court has found that a trial court's refusal to mitigate a defendant's sentence based on prior honorable military service was not error. *State v. Chad Michael Knight*, No. M2005-00779-CCA-R3-CD, 2006 WL 1491573, at *3 (Tenn. Crim. App. May 31, 2006). We also note that although Defendant was honorably discharged from the military, he has two misdemeanor convictions from the National Guard for being AWOL.

Defendant's conviction for aggravated burglary is a Class C felony. As a Range I standard offender, Defendant was subject to a sentencing range of three to six years. T.C.A. § 40-35-112(a)(3). He was subject to a potential sentence of eleven months, twenty-nine days for theft and aggravated criminal trespass, Class A misdemeanors, and thirty days for public intoxication, a Class C misdemeanor.

We conclude that the trial court properly sentenced Defendant. The trial court clearly stated on the record its reasons for the sentence imposed, and Defendant's sentence is within the appropriate range and "justly deserved in relation to the seriousness of the offense" and considering Defendant's "lengthy history of criminal conduct." T.C.A. § 40-35-102(1) and 3(B). The record reflects that the trial court considered the purposes and principles of the Sentencing Act, the evidence adduced at the sentencing hearing which included the presentence report, the parties' arguments, and the nature and characteristics of the crimes. We cannot conclude that the trial court abused its discretion by sentencing Defendant to six years for aggravated burglary, eleven months and twenty-nine days each for theft of property less than $1,000 and aggravated criminal trespass, and thirty days for public intoxication.

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

---

[1] In his brief, Defendant argues for the first time on appeal that the trial court should have considered his voluntary intoxication under mitigating factor (11), that the acts were "committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated [his] criminal conduct." T.C.A. § 40-35-113(11). However, issues raised for the first time on appeal are waived. *See* Tenn. R. App. P. 36(a).

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt; or

(8) The defendant is convicted of two (2) or more offenses involving sexual exploitation of an elderly or vulnerable adult with consideration of the aggravating circumstances arising from the relationship between the defendant and victim, the nature and scope of the sexual acts, and the extent of the physical and mental damage to the victim.

T.C.A. § 40-35-115(b). In *Pollard*, the court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." 432 S.W.3d at 862. "So long as a trial court properly articulates its reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*; *Bise*, 380 S.W.3d at 705. "Trial courts can consider prior misdemeanors in determining whether a defendant has an extensive record of criminal activity" for consecutive sentencing purposes. *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013).

Here the record reflects that the trial court in sentencing Defendant found that Defendant is an offender whose record of criminal activity is extensive. T.C.A. § 40-35-115(b)(2). The record supports this finding as evidenced by Defendant's criminal history

as set forth above. We cannot conclude that the trial court abused its discretion by ordering partial consecutive sentences in this case.

Accordingly, the trial court properly sentenced Defendant, and he is not entitled to relief on his claim that his sentence is excessive.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court.

_____
JILL BARTEE AYERS, JUDGE